UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NAWAPORN PAWANANUN, | ) | CASE NO. 1:20CV1081 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | |
| | ) | |
| MICHAEL A. PETTIT, | ) | OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.:**

Plaintiff Nawaporn Pawananun asks the Court to strike (Doc. 20) portions of Defendant Michael Pettit's first defense because the issue was previously decided by a court in Thailand (the "Thai Court"). But because the Thai Court did not decide an issue under the Hague Convention (the "Convention"), the Court **DENIES** Plaintiff's Motion to Strike.

### I. BACKGROUND

Plaintiff and Defendant married on December 8, 2011. Together, the couple has two daughters. On April 5, 2019, the parties divorced. They agreed to joint custody of the children, with visitations every other week. From 2014 until the parties' divorce, the family lived together in Chiang Mai, Thailand.

That joint custody agreement became strained when Plaintiff introduced Roger Ian Hardy to the children.[1] (Doc. 17, PageID: 141, ¶ 15). According to Defendant, Hardy and Plaintiff are romantically involved. (*Id.*) Defendant argues that Hardy has a history involving allegations of

---
[1] The following factual background is taken from Defendant's Answer, portions of which Plaintiff seeks to strike.

sexual misconduct and physical abuse to former patients and family members. (*See id.*, PageID: 141-144, ¶¶ 15-22).

Defendant believes his children became the target of Hardy's predations in August of 2019. Specifically, after picking the girls up from school alone, Hardy inappropriately touched M.P, the couple's eldest daughter. (*Id.* at PageID: 144, ¶ 25). This caused M.P. to fear Hardy and a desire to avoid returning to Plaintiff's house. (*Id.* at ¶ 26). M.P. also began having nightmares, which Defendant attributed to the actions of Hardy. (*Id.* at ¶ 27).

Because of this, Defendant took M.P. to a psychologist in Thailand. (*Id.* at ¶ 28). During the session, M.P. claimed to have witnessed Hardy inappropriately touch her younger sister Z.P. (*Id.*). M.P. also reported that she was not supposed to tell anyone about Hardy's behavior. (*Id.*). After the session with the psychologist, Defendant took the children to the hospital for an examination. (*Id.* at PageID: 145, ¶ 29).

Hardy's dangerous tendencies are apparently well-known. Defendant claims Hardy's wife has corroborated Defendant's suspicions and M.P.'s report, acknowledging that Hardy is dangerous. (*Id.* at ¶ 32). However, even after four separate discussions, Plaintiff refused to accept Defendant's claims about Hardy. (*Id.* at ¶ 33). According to Defendant, Plaintiff's refusal stems from her desire to help Hardy in his own divorce case. (*Id.*).

Because Plaintiff refused to disassociate herself from Hardy, Defendant believed that Plaintiff placed their children in danger. Defendant subsequently filed a lawsuit in Thailand, seeking to remove the Plaintiff's custody rights over the children.

As it discussed in its written opinion, the Thai Court decided whether it was reasonable to revoke Plaintiff's parental power. (Doc. 20-1, PageID: 260). Defendant's case was predicated on Hardy's alleged abuse of the children. (*See generally*, *id.*). The Thai Court considered

various evidence and made certain evidentiary findings. Much of what the Thai Court considered is presented to this Court in Defendant's First Affirmative Defense, as described above. Ultimately, the Thai Court decided that there was no reason to revoke Plaintiff's parental power, crediting Plaintiff's evidence over Defendant's. (*Id.* at PageID: 264-265).

However, Defendant now claims that the "Thai justice system will not adequately protect the children should they return to Thailand." (Doc. 18, PageID: 239, ¶ 34). He seeks to defend his removal of the children to the United States on the basis that their return to Thailand would present a grave risk of physical or psychological harm under Article 13(b) of the Convention.

Plaintiff moved to strike the portions of Defendant's defense outlined above. (*See* Doc. 20). On July 6, 2020, Defendant opposed Plaintiff's Motion. (Doc. 30). Shortly thereafter, Plaintiff filed a brief Reply in support of her Motion. (Doc. 31).

## II. LAW & ANALYSIS

### A. Standard of Review

Rule 12(f) of the Federal Rules of Civil Procedure allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). A motion to strike "is the primary procedure for objecting to an insufficient defense," *Starnes Fam. Off., LLC v. McCullar*, 765 F. Supp. 2d 1036, 1047 (W.D. Tenn. 2011) (citations omitted), such as when a defense is "insufficient as a matter of law." *HCRI TRS Acquirer, LLC v. Iwer*, 708 F. Supp. 2d 687, 689 (N.D. Ohio 2010).

However, a motion to strike is "a drastic remedy" *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953) and therefore "viewed with disfavor," *Hemlock Semiconductor Operations, LLC v. SolarWorld Indus. Sachsen GmbH*, 867 F.3d 692, 697 (6th Cir. 2017). Accordingly, "[a] motion to strike should be granted if 'it appears to a certainty that

plaintiffs would succeed despite any state of the facts which could be proved in support of the defense and are inferable from the pleadings.'" *Operating Eng'rs Loc. 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015) (quoting *Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir. 1991)).

Finally, the decision whether to strike an affirmative defense lies within the court's discretion. *Conocophillips Co. v. Shaffer*, 2005 WL 2280393, at *2 (N.D. Ohio Sept. 19, 2005) ("Rule 12(f) permits the court to act with discretion in that it may strike irrelevant and superfluous defenses or let them stand. There is absolutely no harm in letting them remain in the pleadings if, as the Plaintiff contends, they are inapplicable.").

According to Plaintiff, the Thai Court previously determined that the evidence did not support the claim that Hardy abused the children. Plaintiff therefore seeks to strike the allegations from Defendant's Answer as res judicata.

However, Plaintiff's chosen mode of attack—a motion to strike—presents her with an uphill battle. And as discussed below, Plaintiff's attack ultimately fails because the Thai Court did not decide the same issue presently before the Court.

**B.      Hague Convention and Comity**

Plaintiff brings her Complaint under the Convention and the International Child Abduction Remedies Act, 22 U.S.C. § 9001, *et seq.*, ("ICARA") (*See* Doc. 1). Under § 9003(g), "[f]ull faith and credit shall be accorded by the courts of the States and the courts of the United States to the judgment of any other such court ordering or denying the return of a child, *pursuant to the Convention*, in an action brought under this chapter." 22 U.S.C. § 9003(g) (emphasis added). Assuming § 9003(g) applies to foreign court decisions,[2] it does not require this Court to

---

[2] *See Diorinou v. Mezitis*, 237 F.3d 133, 143 (2d Cir. 2001) (Section 9003(g) of ICARA does not "extend formal full faith and credit recognition to foreign judgments").

- 4 -

give *res judicata* effect to the Thai Court's custody determination. *See Holder v. Holder*, 305 F.3d 854 (9th Cir. 2002).

In *Holder*, the dispossessed father filed a petition under the Convention in Washington Federal court, only after filing for custody in a California State court. *Holder*, 305 F.3d at 861-62. The district court determined that the State custody determination would be binding on its determination, so the district court stayed the Federal case. *Id.* at 862. In the appeal of the stay, the Ninth Circuit analyzed both claim and issue preclusion of State custody decisions and the Convention. *Id.* at 863-867. Cutting to the point, the appellate court determined that the district court erred in applying general res judicata principles in the Convention context. *Id.* at 864. Rather, district courts should employ the more particularized full faith and credit provision of ICARA. *Id.* The *Holder* court realized that "the typical Hague Convention case involves at least the potential for two competing custody orders, one in the children's 'habitual residence,' and one in the country to which the children have been taken." *Id.* at 865. Thus, courts must apply Convention principles, which only afford preclusive effect to State court adjudications of issues in situations where the State courts have a petition under the Convention before it and rule on the return of children pursuant to the Convention. *Id.* at 866.

Like the State courts in *Holder*, the Thai Court did not have a Convention petition before it. It therefore did not make a decision pursuant to the Convention. And while Plaintiff requests the Court employ general principles of res judicata, the Court must look at the Convention's more particularized full faith and credit provision of § 9003(g). When doing so, the Court reaches the same conclusion as the Ninth Circuit did in *Holder*—the Thai Court's decision is not entitled to preclusive effect as a matter of law under § 9003(g) because it did not decide an issue under the Convention.

Even though § 9003 does not allow the Court to give full faith and credit to the Thai Court's decision, district courts may give foreign judgments deference by the concept of international comity. *Diorinou*, 237 F.3d at 143. Plaintiff advocates for this approach. (Doc. 20, PageID: 251; Doc. 31, PageID: 332). And Plaintiff correctly highlights, "[c]omity is at the heart of the Hague Convention." (Doc. 31, PageID: 332). Courts have further said that the "extension of comity to a foreign judgment is 'neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good, upon the other.'" *Asvesta v. Petroutsas*, 580 F.3d 1000, 1011 (9th Cir. 2009) (citation omitted). When comity is at issue, "a court should begin its analysis 'with an inclination to accord deference to' a foreign court's adjudication *of a related Hague petition.*" *Id.* (citing *Diorinou*, 237 F.3d at 145) (emphasis added).

But again, Plaintiff faces the same challenge with respect to her comity argument—the Thai Court did not adjudicate *a related Hague petition*. Plaintiff cites no caselaw supporting her position where a court defers to a foreign custody judgment in a proceeding under the Convention. Nor has the Court found a decision on point. Rather, the majority of caselaw analyzing comity under the Convention discusses the issue when the foreign court has previously ruled on a Convention petition. Even then, courts of the United States thoroughly review the foreign judgments, analyzing the evidence and evidentiary standards that the foreign court utilizes. *See e.g.*, *Asvesta*, 580 F.3d at 1013 ("in the context of the Hague Convention, a court's decision to extend comity to a foreign judgment may be guided by a more searching inquiry into the propriety of the foreign court's application of the Convention, in addition to the considerations of due process and fairness…").

All the Court has before it is the Thai Court's written opinion. The Court does not have the transcript; the evidence presented before the Thai Court; nor the evidentiary rules and burdens that the Thai Court employed.

But even without that information, it remains clear that the Thai Court did not decide the same issue before this Court. Rather, the Thai Court's focus was on custody; a different consideration than "grave risk of harm" under Article 13(b) of the Convention. Here, the Court will not decide the custody issue. *See Friedrich v. Friedrich*, 983 F.2d 1396, 1400 (6th Cir. 1993) (district courts do not have authority to determine the merits of the underlying custody claim). But the Court does have the authority to adjudicate the abduction claim. *Id.* And while "comity among nations argues for a narrow interpretation of the 'grave risk of harm' defense," the "safety of the children is paramount." *Van de Sande v. Van de Sande*, 431 F.3d 567, 572 (7th Cir. 2005). Thus, while Defendant has a high burden to satisfy in proving grave risk of harm, he nonetheless may do so as alleged in his Answer.

### III. CONCLUSION

Because the Thai Court did not decide an issue under the Convention, as well as caselaw's negative treatment of motions to strike, the Court declines to strike the complained about paragraphs from Defendant's Answer. Therefore, Plaintiff's Motion to Strike (Doc. 20) is **DENIED**.

**IT IS SO ORDERED.**

                         s/ Christopher A. Boyko
                         **CHRISTOPHER A. BOYKO**
                         **Senior United States District Judge**

**Dated: August 4, 2020**